IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN A. DUARTE,<br><br>                   Petitioner,<br><br>           vs.<br><br>PATRICK COVELLO, Acting Warden,<br>Mule Creek State Prison,[1]<br><br>                   Respondent. | No. 2:15-cv-01902-JKS<br><br>ORDER<br>[Re: Motion at Docket No. 42]<br>and<br>MEMORANDUM DECISION |

Steven A. Duarte, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Duarte is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Mule Creek State Prison. Respondent has answered, and Duarte has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On June 4, 2010, Duarte was charged with the murder of his girlfriend, Serena Williams, after he shot her in the head at close range because he was sick of her disrespecting him and believed she had given him HIV or AIDS. In addition to charging him with malice aforethought murder (Count 1), the amended information charged Duarte with possessing and intentionally discharging a firearm (Count 2). The amended information also alleged as a special circumstance that he had committed a prior second degree murder. It further alleged that the prior murder conviction was a serious felony, which qualified as a strike, and that he had served prior prison terms for that murder and for two second-degree burglaries. On direct appeal of his

---

[1]     Patrick Covello is substituted for Joe Lizzaraga as Acting Warden, Mule Creek State Prison. FED. R. CIV. P. 25(d).

conviction, the California Court of Appeals recounted the following facts underlying the charges against Duarte and the evidence presented at trial:

### A
### *Facts Leading Up To The Murder And The Murder*

[Duarte] and Williams had an on-and-off relationship that began in 2004. In about 2007, [Duarte] lived with Williams for about two to four months in a duplex that was also being shared with roommates Paul Olney and Robert Heyer. [Duarte] and Williams fought a lot and some of those arguments involved jealousy. [Duarte] learned he was HIV positive in April 2007. [Duarte] believed Williams had given him the virus or AIDS, and they fought about that, too.

In August 2007, [Duarte] moved in with roommate Johnny DiMatteo. According to DiMatteo, [Duarte] "always seemed hateful to [Williams]." In February 2008, [Duarte] told DiMatteo he had HIV and said Williams gave it to him. [Duarte] told him that Williams did not seem to care that she had HIV, and did not care that he had HIV, he was "shattered" by those things, and he called her names like "cunt" and a "piece of ass."

March 18, 2008, was the day Williams was murdered. At that time, [Duarte] and Williams were "kind of in the middle of breaking up." At 3 p.m., Heyer started his work shift at the Alano Club (which is a clean and sober place where addicts socialize), and Williams was there with her siblings and friends laughing and talking. [Duarte] came by a few minutes later and tried to talk with Williams, but she did not want to listen to him. He then found Heyer in the back room and said that "[h]e just had enough of [Williams] humiliating him and laughing at him," and he was sick of her and he was not going to be humiliated by her anymore.[FN1]

> FN1. He had also complained to others that he was sick of Williams flirting with other men, ignoring him and disrespecting him, and he appeared jealous that she had just recently gotten a tattoo acknowledging her relationship with an ex-fiancé who had recently died.

Around 4:30 or 5:30 p.m., [Duarte] went back to the house he was sharing with DiMatteo and asked DiMatteo to borrow a pistol to defend his nephew who had been accosted by gang bangers. DiMatteo retrieved his .22–caliber semiautomatic handgun from his son's nearby house and returned home between 7:30 and 8:00 p.m. DiMatteo put the gun on the kitchen table and [Duarte] picked it up and left.

At 11:11 p.m., Williams's cousin, Denise Veach, who lived two doors down from Williams, heard a bang that sounded like a small caliber gun going off in the direction of Williams's duplex. She looked out her window and saw somebody running. Three or four days earlier, she had overheard [Duarte] telling Williams, "I am going to blow your brains out."[FN2]

> FN2.   However, Veach did not tell the officer investigating the shooting about [Duarte's] earlier comments.

Back at DiMatteo's home, DiMatteo had fallen asleep in front of the television. He was awakened by [Duarte], who asked DiMatteo for some gas money and told DiMatteo to clean up his "mess," referring to the marijuana that DiMatteo was growing. DiMatteo knew that something must have gone terribly wrong for [Duarte] to ask him for money and tell him to clean up his mess.

Around 11:55 p.m., Heyer returned to the duplex he shared with Williams. He found her dead body draped over the stove and called 911. According to an autopsy, Williams's head had been slammed against the stove and she had been fatally shot in the head. There was blood in her airways and lungs, which meant she did not die instantly; it probably took "many seconds."

[Duarte] was arrested for murdering Williams. While awaiting trial, [Duarte] confessed to three others in jail that he had shot Williams.

[Duarte] testified at trial and denied killing Williams. He also testified that he had never confessed to the killings and that his jail mates were lying.

### B
### *[Duarte's] Prior Acts Of Domestic Violence*

Katherine Leon was [Duarte's] ex-wife, with whom he had a child in 1974 and married in 1975. In 1974 or 1975, [Duarte] overheard her talking with his brother about what [Duarte] perceived to be an inappropriate sexual matter (the brother's sexual relationship with the brother's girlfriend). [Duarte] responded by hitting Leon on the head and knocking her out. They divorced in 1979.

Theresa Hodges was [Duarte's] live-in girlfriend, whom he married in 1996. In April 1995, [Duarte] slapped her, tried to smother her, chased her with a gun and shot it near her feet because he thought she had cheated on him and lied to him. In May 1995, [Duarte] grabbed her by the hair, punched her in the jaw, and fondled her vagina, because he was jealous and thought she had been having sex with someone else. In 1998, he put her in a choke hold, put his hand over her mouth, and injected heroin into her arm because he thought she had cheated on him. They divorced in 2001.

Patricia Sulpizio was [Duarte's] intimate friend with whom he cohabitated. In 2007, [Duarte] was having what Sulpizio described as a temper tantrum, so she "snicker[ed]" at him. In return, he called her names, including slut, whore, and cunt, put his chest up against hers, and then threw her down onto the bed.

[Duarte] testified at trial that the testimony of these women was exaggerated or embellished.

*People v. Duarte*, No. C072410, 2014 WL 1386371, at *1-2 (Cal. Ct. App. Apr. 9, 2014).

At the conclusion of trial, a jury found him guilty of first-degree murder and being a

3

felon in possession of a firearm.  The court also found true a number of enhancements, including that he had previously been convicted of murder.  The court subsequently sentenced him to a term that included life imprisonment without the possibility of parole ("LWOP").

Through counsel, Duarte appealed his conviction, arguing that: 1) the trial court erred in admitting the prior acts of domestic violence because the charged crime of murder, on its face, was not an offense involving domestic violence; 2) the court abused its discretion in admitting the prior acts of domestic violence under California Evidence Code § 352;[2] and 3) the court abused its discretion in denying Duarte's request, made at sentencing, to represent himself to research and later move for a new trial based on the ineffective assistance of counsel.  The Court of Appeal unanimously affirmed the judgment against Duarte in a reasoned, unpublished opinion issued on April 9, 2014.  *Duarte*, 2014 WL 1386371, at *7.  Duarte petitioned for review in the California Supreme Court, which was denied without comment on June 25, 2014.  His conviction became final on direct review 90 days later, when his time to file a petition for certiorari in the U.S. Supreme Court expired on September 23, 2014.  *See Jiminez v. Quarterman*, 555 U.S. 113, 119 (2009); *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003).

Duarte timely filed a Petition for a Writ of Habeas Corpus in this Court on August 24, 2015.  Docket No. 1; *see* 28 U.S.C. § 2244(d)(1),(2).  This Court, through a previously-assigned magistrate judge, screened Duarte's initial petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, and dismissed the petition with leave to amend for failure to state a cognizable claim.  Docket No. 6 at 2.  Duarte filed an Amended Petition

---

[2]     That section requires the trial judge to balance the probative value of proffered evidence with its potential prejudicial effect.  CAL. CODE EVID. § 352.

4

("Petition"), Docket No. 10, which is now fully briefed and before the undersigned judge for adjudication. Also pending before the Court is Duarte's second motion to stay these proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269, 276 (2005), so that Duarte may exhaust additional claims in state court.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Duarte raises the claims he unsuccessfully raised to the California state courts on direct appeal. Namely, Duarte argues that: 1) the trial court erred in admitting the prior acts of domestic violence because the charged crime of murder, on its face, was not an offense involving domestic violence; 2) the court abused its discretion in admitting the prior acts of domestic violence under California Evidence Code § 352; and 3) the court abused its discretion in denying Duarte's request, made at sentencing, to represent himself to research and later move for a new trial based on the ineffective assistance of counsel. Duarte also requests the appointment of counsel.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

5

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  A summary denial is an adjudication

on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

    A.    <u>*Evidentiary Errors*</u> (Ground 1, 2)

In two related claims, Duarte argues that the trial court erred in admitting his prior acts of domestic violence. In Ground 1, he contends that the Court of Appeal unreasonably determined that the evidence presented at trial established that the charged murder involved domestic violence. He similarly avers in Ground 2 that the prior domestic violence evidence was unduly prejudicial in violation of § 352 and federal due process.

The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights. *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Indeed, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules

7

of evidence, provided that none of them infringes a guarantee in the Federal Constitution." *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

"The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67). Where a due process violation is alleged stemming from an evidentiary challenge, federal courts review such alleged due process violations for whether admission of certain evidence "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. A habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir.), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005). The "[a]dmission of evidence violates due process only if there are *no* permissible inferences the jury may draw from it." *Boyde*, 404 F.3d at 1172 (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)) (internal quotation marks omitted; emphasis in original); *see also Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that the Supreme Court has not made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ of habeas corpus).

Duarte fails to satisfy these high standards with respect to either of his claims. As an initial matter, to the extent he re-raises here his direct appeal claim challenging the state courts' determination that the murder charge involved domestic violence such that California Evidence Code § 1109[3] applied, such claim presents only an error of state law that is not cognizable on

---

[3] That section authorizes "evidence of the defendant's commission of other domestic violence" . . . "in a criminal action in which the defendant is accused of an offense involving domestic violence." CAL. EVID. CODE § 1109(a)(1).

federal habeas review. Again, federal habeas relief is available only for violations of the Constitution, treaties or laws of the United States, and any claim alleging § 1109 error is not a proper basis for federal habeas relief. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). "Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987). Duarte's challenge to the trial court's evidentiary ruling raises no federal question because "alleged errors in the application of state law are not cognizable in federal habeas corpus." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996); *see also Cooper v. Brown*, 510 F.3d 870, 1001 (9th Cir. 2007) (claim of evidentiary error "fails to present a federal question cognizable on federal habeas review").

Nor can he show that § 1109, which provides for admission of evidence of prior domestic violence, and CALCRIM No. 852, which instructs the jury how to consider this evidence, are unconstitutional on their face. As the Ninth Circuit held in *United States v. LeMay*, 260 F.3d 1018 (2001), Federal Rule of Evidence 414, which is analogous to California Evidence Code § 1109, "does not discriminate against any group of individuals on the basis of suspect or quasi-suspect class" because "[s]ex offenders are not a suspect class" and the Rule does not infringe on a fundamental right. *Id.* at 1030-31. Thus, the Ninth Circuit determined that Rule 414 is constitutional so long as it bears a "reasonable relationship to a legitimate government interest." *Id.* at 1031.[4] Here, the class of intimate partner batterers, just as the class of sex

---

[4] While it does not appear that any federal Court of Appeals has specifically ruled on the constitutionality of § 1109, several circuit courts have upheld the use of propensity evidence under Rules 413 and 414 of the Federal Rules of Evidence, which are analogous to

offenders, are not a suspect or quasi-suspect class, and § 1109 bears a reasonable relationship to the legitimate government interest in the effective prosecution of domestic violence cases. *See Jensen v. Hernandez*, 864 F. Supp. 2d 869, 925 (E.D. Cal. 2012).

Moreover, California Evidence Code § 1109 does not infringe on a fundamental right because defendants in a criminal trial have "no fundamental right to have a trial free from relevant propensity evidence that is not unduly prejudicial." *Id.* at 1030. As the California Supreme Court held in *Falsetta*, the requirement under § 352 to balance the prejudicial effect of the evidence against its probative value ensures that evidence admitted under § 1109 will not infringe on the right to a fair trial guaranteed under the Due Process Clause. *People v. Falsetta*, 986 P.2d 182 (Cal. 1999).

Nor is Duarte entitled to relief on his related claim that the trial court's ruling violated California Evidence Code § 352. Federal Rule of Evidence 403, the federal counterpart to § 352, permits the exclusion of evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ." *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009). California employs a similar rule. *See People v. Harris*, 118 P.3d 545, 565

---

§ 1109. *See*, *e.g.*, *United States v. Castillo*, 140 F.3d 874, 881 (10th Cir. 1998); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998).

(Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence."). In his Petition, Duarte argues that the trial court erred in its balancing of evidence under Evidence Code § 352. But to the extent that he argues that the admission violated state law, Duarte is not entitled to habeas relief. *See Wilson v. Corcoran*, 562 U.S. 1, 4 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *Estelle*, 502 U.S. at 67-68.

Moreover, Duarte cannot show that the admission violates federal due process. "'The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process.'" *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995)); *see also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.1991) (proper analysis on federal habeas review is "whether the admission of the evidence so fatally infected the proceedings as to render them fundamentally unfair"). "The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." *Holley*, 568 F.3d at 1101 (9th Cir. 2009). "Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Id.* (citing *Williams*, 529 U.S. at 375). Absent such "clearly established Federal law," it cannot be concluded that the appellate court's ruling was an "unreasonable application." *Carey*, 549 U.S. at 77 (noting that, where the Supreme Court has not adequately addressed a claim, a federal court cannot find a state court ruling unreasonable). Duarte is therefore not entitled to relief on any argument advanced in support of these grounds.

B.	*Denial of Self-Representation* (Ground 3)

Duarte further argues that the trial court erred when it denied his request, made at sentencing, to discharge appointed counsel and represent himself for the purpose of researching and filing a new trial motion based on the ineffective assistance of trial counsel. The record reflects that the trial court denied the motion as untimely and not made in good faith but rather for the purpose of delay. The court further found that the ineffective assistance of counsel arguments that Duarte wanted to raise were not meritorious such that any eventual motion for a new trial would have been denied.

Under the Sixth Amendment, criminal defendants have a right to be represented by an attorney. U.S. CONST. amend. VI. The right to counsel has been interpreted to encompass "an independent constitutional right" of the accused to represent himself at trial, and thus waive the right to counsel. *Faretta v. California*, 422 U.S. 806 (1975) (holding that a defendant in a state criminal trial has the constitutional right to refuse appointed counsel and represent himself when he does so voluntarily and intelligently). This right, however, is neither automatic nor without qualification. "While the right to counsel attaches unless affirmatively waived, the right to self-representation does not attach until asserted." *Sandoval v. Calderon*, 241 F.3d 765, 774 (9th Cir. 2001). To properly invoke his rights under *Faretta*, a defendant's request must be timely, not for purposes of delay, unequivocal, and knowing and intelligent. *United States v. Maness*, 566 F.3d 894, 896 (9th Cir. 2009) (per curiam); *Sandoval*, 241 F.3d at 774 ("A defendant may not invoke the *Faretta* right if the *Faretta* demand is untimely, equivocal, made for the purpose of delay, or is not knowingly and intelligently made.").

The only guidance provided by the Supreme Court regarding timeliness of a Faretta motion provides that a motion made "weeks before trial" is timely. *See Stenson v. Lambert*, 504 F.3d 873, 884-85 (9th Cir. 2007) (noting that *Faretta* "indicates only that a motion for self-representation made 'weeks before trial' is timely.") The Ninth Circuit has held that "[b]ecause the Supreme Court has not clearly established when a *Faretta* request is untimely, other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely." *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005).

California law provides that a motion made after the guilt phase is untimely and subject to the trial court's discretion. *People v. Doolin*, 198 P.3d 11, (Cal. 2009). In this case, the record supports that Duarte's request was manifestly untimely. Duarte did not request self-representation during the guilt phase and only requested it on the day he appeared for sentencing. As the state courts' untimeliness determination does not run afoul of *Faretta*, it cannot be said that the court's rejection of Duarte's self-representation request was unreasonable or contrary to federal law.

Moreover, the trial court's conclusion that a new trial motion would not have been successful is both reasonable and fully supported by the record. As the Court of Appeal explained:

> As to the ineffective assistance claims, [Duarte] on appeal focuses on three, all of which were discussed by the trial court.
> The first was trial counsel's failure to present evidence of [Duarte's] cell phone records showing text messages between him and Williams in the days before her murder, which [Duarte] claimed would show a lack of animosity between them.
> The second was cell phone records demonstrating where [Duarte] was at the time of the murder, which he claims would have impeached DiMatteo's testimony about what time he left DiMatteo's home with the gun and what time he returned.

13

> The record shows that trial counsel's decision not to admit this evidence was tactical.  Specifically, in response to these two allegations of ineffective assistance, counsel stated, "There was other information that I received . . . in those cell phone records earlier in the evening that caused me concern, and I don't want to elaborate beyond that; but it was because of that information that I decided that I would not use the cell phone records."
>
> The third was failing to call Veach's daughter, Jolene Gerber, as a witness to testify that [Duarte] was not in the area a couple of days before the murder, which would have impeached Veach's testimony that Veach overheard [Duarte] threaten to blow Williams's brains out.  However, as the trial court pointed out, Veach's testimony already had been impeached by one of the investigating officers.

*Duarte*, 2014 WL 1386371, at *6-7.

Given the timing of Duarte's request, and in light of the facts that the ineffective assistance claims are meritless and nonetheless could have been raised on post-conviction review, Duarte fails to show that the state courts' rejection of his claim was unreasonable or contrary to federal law.  Accordingly, he is not entitled to relief on this ground either.

C.       *Motion for Stay and Abeyance* (Docket No. 42)

Duarte also files at Docket No. 42 a motion to stay and hold these proceedings in abeyance while he pursues exhaustion in the state courts.  District courts have the authority to issue such stays to allow petitioners to return to state court to exhaust their state remedies but only "where such a stay would be a proper exercise of discretion."  *Rhines v. Weber*, 544 U.S. 269, 276 (2005).  Under *Rhines*, a district court may stay a federal habeas petition containing both exhausted and unexhausted claims if: 1) good cause exists for failure to have first exhausted the claims in state court; 2) the claim or claims at issue potentially have merit; and 3) the petitioner has not intentionally delayed pursuing the litigation.  *Id.* at 277-78.

Duarte fails to show that a stay is warranted here.  The record reflects that, after Respondent answered the Petition and argued that two of his claims were unexhausted, Docket

14

No. 19, Duarte filed an initial motion to stay, Docket No. 21.  Although not entirely clear, it appears that Duarte wished to exhaust claims alleging his actual innocence that had not been raised to any court.  Docket No. 21.  The Court, through a previously-assigned magistrate judge, denied the request, finding that even if Duarte's alleged medical issues constituted good cause, he failed to show that an unexhausted claim of actual innocence was potentially meritorious.  Docket No. 27 at 3.

Nearly four years later, Duarte filed another motion to stay which again appears argue that a stay is warranted for him to pursue exhaustion of claims based on an actual innocence theory. Docket No. 42 at 1-2.  Duarte's filing at Docket No. 42 shows that, since the time his initial stay motion was denied, Duarte has pursued a motion for post-conviction discovery in California Superior Court, and that court ordered the District Attorney's Office to provide him with files from his underlying case.  Docket No. 42 at 2-3.  He also provides correspondence that shows that the District Attorney's Office attempted to provide those materials to Duarte in May 2020, although Duarte apparently disputes that he actually received them.  Docket No. 42 at 21.

Although he points to evidence that he has either recently received, or is in the process of receiving, he provides no evidentiary support for his actual innocence claim, stating only that "development of [evidence that tends to show he is actually innocent of the underlying crimes] is taking longer than anticipated due primarily to the direct interference of prison officials." *Id.* at 1.  This lack of evidentiary support is fatal to his stay request, as Duarte fails to establish either the requisite good cause or that the claim is not plainly meritless because he does not show a real probability that the disclosed materials will tend to show his actual innocence.  *See*, *e.g.*, *Sadowski v. Grounds*, 358 F. Supp. 3d 1064, 1070-72 (C.D. Cal. 2019) (no good cause where

petitioner neither pointed to any specific evidence to support his argument nor explained how such evidence established good cause).  Duarte's unsupported claim that evidence tending to show his actual innocence may be found in the recently-disclosed materials is simply too speculative to warrant staying these proceedings and holding them in abeyance.  For Duarte to show that a stay is warranted to present to the California courts evidence of his actual innocence, it is incumbent upon him to provide such evidentiary support in *this* Court.  Duarte fails to do so, and his request for a stay must be denied.

D.       *Request for the Appointment of Counsel in these Proceedings*

Finally, Duarte requests the appointment of counsel to assist him in these habeas proceedings.  While this Court is not unmindful of the plight of unrepresented state prisoners in federal habeas proceedings, there is no constitutional right to counsel in federal habeas proceedings.  *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)).  Appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing.  *See* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a), 8(c).  This Court may under the Criminal Justice Act appoint counsel in this case if it determines that the interests of justice so require.  28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B); *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.").

Because this case has been fully briefed, and the Court has now considered and adjudicated it on the merits and determined that no certificate of appealability should issue, this Court does not so determine. Duarte's request for counsel is therefore denied. Duarte may renew his request in the event he obtains a certificate of appealability from the Ninth Circuit Court of Appeals, in which case he may request the appointment of counsel to assist him in appealing from this Court's decision denying him habeas relief.

## V. CONCLUSION AND ORDER

Duarte is not entitled to relief on any ground raised in his Petition, nor is he entitled to a stay of these proceedings or the appointment of counsel.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion to Stay at Docket No. 42 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 11, 2020.

               /s/James K. Singleton, Jr.
               JAMES K. SINGLETON, JR.
               Senior United States District Judge